**STATE of Missouri, Respondent,**

v.

**Bernard BISHOP, Appellant.**

No. 45985.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 13, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Oct. 26, 1983.

Application to Transfer Denied
Dec. 20, 1983.

Shaw, Howlett & Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction of first degree robbery and attempted first degree robbery and resultant sentences of ten and five years to be served consecutively.

No question is raised about the sufficiency of the evidence. Defendant, accompanied by another person, accosted two women in the Central West End in the City of St. Louis. Defendant pulled a knife; his companion had a gun. They ordered the victims to give them their purses. One did; the other ran screaming into the street. Defendant and his companion fled to an alley where they entered a Cadillac automobile and left the scene. The cries for help caused some men in a passing vehicle to give chase to the Cadillac. The chase in turn resulted in the escaping automobile being involved in an accident with two additional vehicles. The driver of the Cadillac was captured at the scene; two persons seen fleeing from the car were not apprehended. Defendant was arrested the next day for an unrelated murder. Charges for that crime were subsequently dropped. Both victims positively identified defendant as the robber with the knife at a photographic display, at a lineup, and in court. Defendant presented evidence of an alibi.

Defendant's first contention of error is that the trial court committed error in failing to disqualify the prosecutor and in failing to declare a mistrial when evidence of prosecutorial misconduct surfaced. Defendant was arrested on September 20, 1981 on the murder charge. In December, 1981, he was still incarcerated on that charge and the two charges involving the West End robberies. Defendant was represented by counsel on all three charges and this was known to the prosecutor. The prosecuting attorney had determined that the murder

charge would be dropped. The assistant prosecuting attorney, Mr. Chancellor, accompanied by his investigator, Officer Ostenfeld, went to see defendant in jail. No notification was given to defendant's counsel of this visit.

The evidence of this meeting first came into the case during defendant's testimony. He testified that Chancellor told him that the murder charge was being dropped but that if defendant "didn't help him to solve this murder, ... that he would see to it that I would go to the penitentiary for this robbery." On cross-examination, Chancellor asked a series of questions apparently designed to place a somewhat different emphasis on the conversation. On rebuttal Officer Ostenfeld testified that the conversation was between him and defendant and that Chancellor only accompanied him. He further testified that he told defendant that if he heard anything about the murder he should contact Ostenfeld or Mr. Shaw (defendant's attorney). It is clear from all the testimony that no facts concerning the robbery charges of which defendant was convicted were discussed.

Rule 4, DR 7–104 provides in pertinent part as follows:

"(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

The reasons for this disciplinary rule are set out in Rule 4, EC 7–18. The subject matter of the communication between Chancellor and defendant, or defendant and Ostenfeld in Chancellor's presence, was the charges against defendant on which Chancellor was representing the state and on which defendant was represented by the non-informed and non-consenting Shaw. Such communications by a prosecutor are forbidden by the Rules of the Supreme

Court and are a violation of professional ethics.

The seriousness of such conduct on the trial of criminal cases is pointed out by the fact that the supreme court in *State v. Chandler*, 605 S.W.2d 100 (Mo. banc 1980) [1] felt obligated to call attention to the "extremely suspect" nature of such communications.[1] In *State v. Burns*, 322 S.W.2d 736 (Mo.1959) [6], a conviction was reversed because information was obtained by a lawyer representing defendant who subsequently became the prosecuting attorney and was involved to some degree in defendant's prosecution. The court did not attempt to weigh or measure the prejudice to defendant, holding that whether or not the information played any part directly or indirectly in defendant's conviction, the fact that the lawyer acquired information and that he might use it was sufficient to require reversal.

*State v. Boyd*, 560 S.W.2d 296 (Mo.App. 1977) carried that doctrine one step further. There defendant was represented by the Public Defender's office. The principal trial counsel for the state at defendant's trial had been an employee of that office at the time of the filing of the information, preliminary hearing, and arraignment in defendant's case. There was no indication, and the prosecutor denied, that the prosecutor obtained any information about defendant or his case while employed by the Public Defender. The court reversed the conviction because there existed an "apparent conflict of interest and appearance of impropriety inimical to the proper administration of criminal justice." If we follow *State v. Boyd, supra,* we would reverse this conviction.

 However, we believe *State v. Smothers,* 605 S.W.2d 128 (Mo. banc 1980) [5, 6], requires more than a violation of professional ethics to justify reversal. There it was urged that willful violation of

discovery rules by the prosecution warranted reversal as a deterrent to prosecuting attorneys. The court addressed that issue as follows:

"A conviction resulting from a fair trial should not be reversed for the purpose of disciplining and deterring prosecutors, particularly where the mechanism for discipline and deterrence is provided elsewhere."

There exists a mechanism for such discipline and deterrence within the structure of the Missouri Bar. We therefore must examine whether the prosecutor's misconduct resulted in prejudice to defendant causing the trial to be unfair. We cannot find such prejudice. There is no evidence (and all evidence is to the contrary) that the prosecutor obtained a single shred of information concerning the robbery charges or defenses to those charges from the defendant from the meeting. If he had we would place the burden upon the state to demonstrate that such information could not have been, under any circumstances, of benefit to the prosecution or detrimental to defendant. We believe that where information is obtained *Burns* and *Smothers* interpreted compatibly require reversal unless it is demonstrated that no prejudice to defendant could possibly have occurred.

The only contention of prejudice made by the defendant is that revelation of the meeting placed his credibility against that of the prosecutor. But that was the trial strategy he adopted. Defendant introduced the evidence of the meeting in an attempt to show that he was being prosecuted for the robbery because he failed to cooperate with the prosecutor in supplying information about the murder. But for the meeting, this evidence would not have been available to defendant for his use in defending himself. No prejudice exists where information he deems useful to his defense is

1. In that case the communications occurred because the defendant claimed that he was hired by his attorney to kill the victim for whose murder defendant was charged and on which charge he was represented by the attorney. Those unique circumstances justified the

communications in that case. No question was raised there of the ethical violations; the issue raised was whether the communications arose from a waiver of the right to counsel. The court on its own discussed the ethical question.

introduced by him as a part of his trial strategy. There is no basis for us to reverse the conviction here because of the jailhouse meeting, improper as it may have been.

 Defendant has raised three additional points. We find no error in the instructions given by the court. We find that the trial court adequately cured any prejudice resulting to defendant from a police officer's reference to police department photographs as being of "associates" of defendant. The reference by the prosecutor in argument to Gaslight Square and that it was a fine place until "people like the defendant ruined it" was not prejudicial. The reference to "people like defendant" reasonably refers to defendant's criminal activity not his race. We will not place the most sinister meaning upon an argument which can just as reasonably mean something properly the subject of argument.

Judgment affirmed.

PUDLOWSKI, P.J., and KELLY, J., concur.